**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **THE CINCINNATI INSURANCE COMPANY,** | § § § § § § | |
| *Plaintiff,* | § § | **CASE NO. ____1:21-cv-217_____** |
| **v.** | § § | |
| **AUSTINTRU, LLC, TRUFUSION MGMT, LLC, AND MORJER LP** | § § § | |
| *Defendants.* | § § | |

## COMPLAINT SEEKING DECLARATORY RELIEF

TO THE COURT:

Plaintiff The Cincinnati Insurance Company ("Cincinnati") files this Complaint Seeking Declaratory Relief against Defendants Austintru, LLC, Trufusion MGMT, LLC and Morjer LP ("Defendants") and in support would respectfully show this Court as follows:

### I.   RELIEF SOUGHT

1.   Pursuant to 28 U.S.C §2201 and CIV. PRAC. & REM. CODE § 37.001 et seq., Cincinnati seeks a declaration from this Court that no coverage is owed for the claims made by Defendants for business income, extra expense and additional coverages under a policy of insurance written by Cincinnati.

### II.   PARTIES

2.   Cincinnati is an insurance carrier with its headquarters and principal place of business in Cincinnati, Ohio. It is a citizen of the State of Ohio.

3.     AustinTru, LLC is a Texas limited liability company with its principal office located in Austin, Texas. Its member is Jeremy Davis, who resides in Austin, Texas. It is a citizen of the State of Texas.

4.     TruFusion MGMT, LLC is a Texas limited liability company with its principal office located in Austin, Texas. Its member is Jeremy Davis, who resides in Austin, Texas. It is a citizen of the State of Texas.

5.     Morjer LP was a limited partnership organized in the State of Texas with its principal office located in Austin, Texas. It was a citizen of Texas, but forfeited its existence in February 2020.

### III.   JURISDICTION & VENUE

6.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1332 as there is complete diversity of citizenship between the Plaintiff and all Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because this is the judicial district in which Defendants conduct business and because a substantial part of the events or omissions giving rise to this lawsuit have occurred in this district.

8.     This Court has jurisdiction to grant declaratory relief, under 28 U.S.C. §2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy as detailed below.

### IV.   BACKGROUND

9.     Defendants operate a TruFusion group fitness facility located at 4211 South Lamar Boulevard in Austin, Texas. They offer group exercise classes and access to fitness equipment to members of the public in exchange for a fee.

10.     Cincinnati issued a commercial property policy to Defendants under policy number EDT 052 90 04 ("the "Policy"). The Policy was issued in Texas with a policy period from April 9, 2019 to April 9, 2022. A true and correct copy of the Policy is attached as **Exhibit A**.

11.     Defendants submitted a claim to Cincinnati, alleging that they suffered certain losses as a result of orders entered by the State of Texas arising out of the COVID-19 pandemic.

12.     Cincinnati assigned Senior Field Claims Specialist Michael Murphy to Defendants' claim. Mr. Murphy issued a Reservation of Rights letter to Defendants, advising that Cincinnati was beginning its investigation.  Defendants' claim was then transferred to Field Claims Specialist Lindsay Bellow, who instructed Defendants to address all communication to her attention. Cincinnati has advised the Defendants that Mr. Murphy and Ms. Bellow will be fully indemnified by Cincinnati for any claim made against them in relation to their involvement with Defendants' claim for coverage.

13.     In support of their claim, Defendants submitted correspondence to Cincinnati, dated January 26, 2021, purporting to be a Proof of Loss demanding coverage under the Policy. A true and correct copy of Defendants' Proof of Loss correspondence is attached as **Exhibit B**.

14.     Defendants claim that they closed the doors to their gym facility on March 16, 2020 because of COVID-19 and the resulting government shutdown orders. They claim they reopened the facility on August 1, 2020. Copies of the pertinent orders are attached hereto as **Exhibits C, D, E, F, G, H, I and J**.

15.     Cincinnati denied Defendants' claim on March 8, 2021.

16.     Defendants claim to be entitled to coverage under the Policy for lost business income, extra expenses, civil authority, extended business income and ingress and egress

additional coverages under the Policy. Defendants claim to have suffered $1,717,088 in monetary losses as a result of a slow-down in business related to the COVID-19 pandemic.

## V.  THE POLICY

17.    The Policy includes business income coverage under Form FM 101 (05/16) and in Business Income (And Extra Expense) Coverage Form (FA 213 05 16). The pertinent language is substantially similar. Form FA 213 05 16 provides:

### Business Income

    a.  We will pay the for actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

18.    Policy Section A, Paragraph 2 Extra Expense (form FA 213 05 16) states:

### Extra Expense

    a.  Extra Expense coverage is provided at "the premises" described in the Declarations only if the Declarations show that "Business income" coverage applies at that "premises".

    b.  Extra Expense means necessary expenses you sustain (as described in Paragraphs 2.c., d. and e.) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

    c.  If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph 2.d.) to:

        (1) Avoid or minimize the "suspension" of business and to continue "operations" either:

            (a)    At the "premises"; or

            (b)    At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

        (2) Minimize the "suspension" of business if you cannot continue "operations".

19.    Policy Section A, Paragraph 5.b. Civil Authority (in form FA 213 05 16) states:

**Civil Authority**

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

    (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

    (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damages property.

20.    Policy Section A, Paragraph 5.c. Extended Business Income (in form FA 213 05 16) states:

**Extended Business Income**

**(1)** "Business Income" Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a "Business Income" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

    a)    Begins on the date property (ex-cept "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    (b)    Ends on the earlier of:

        (i)    The date you could restore your "operations", with rea-sonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

        (ii)    60 consecutive days after the date determined in **c.(1)(a)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of un-favorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

(a)     Begins on the date property is actually repaired, rebuilt or re-placed and tenantability is re-stored; and

(b)     Ends on the earlier of:

    (i)     The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

    (ii)     60 consecutive days after the date determined in c.(2)(a) above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

21.     Policy Section A, Paragraph 5.e. Ingress and Egress (in form FA 213 05 16) states:

**Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

Ingress and egress coverage for Extra Expense will begin at time of the direct "loss" and will continue for 30 consecutive days or whenever your Ingress and Egress "business income" coverage ends, whichever occurs first.

22.     The Policy (form FM 101 05 16) contains the following language:

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

*      *      *

**3.**     **<u>Covered Causes of Loss</u>**

**a.**     **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

**b.**     **Exclusions**

**(1)**     We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

    **(a)**     **Ordinance or Law**

    Except as provided in SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law, the enforcement of or compliance with any ordinance or law:

        **1)**     Regulating the construction, use or repair of any building or structure . . . ."

*      *      *

**(2)**     We will not pay for "loss" caused by or resulting from any of the following:

    **(b)**     **Delay or Loss of Use**

    Delay, loss of use or loss of market.

*      *      *

**(3)**     We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c).** However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through (3)(c) results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

    **(b)**     **Acts or Decisions**

<u>7</u>

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

23.     "Loss" is defined in the Policy to mean "accidental physical loss or accidental physical damage."

24.     The Policy, in form FM 101 05 16, defines "period of restoration" as follows:

"Period of restoration" means the period of time that:

a.      Begins at the time of direct "loss".

b.      Ends on the earlier of:

(1)     The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

(2)     The date when business is resumed at a new permanent location; or

c.      "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(1)     Regulates the construction, use or repair, or requires the tearing down of any property; or

(2)     Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

d.      The expiration date of the Coverage Part will not cut short the "period of restoration".

## VI.     RELIEF SOUGHT

25.     Defendants' claim for Business Interruption and Extra Expense coverage as a result of the COVID-19 pandemic and related government orders does not satisfy the prerequisites for coverage as established in the Policy. The Defendants have not suffered direct physical loss or

direct physical damage to property. The Coronavirus does not cause physical alteration to property. This is, in part, because it can be cleaned. See CDC Guidelines attached as **Exhibit K.**

26.     There is no coverage under the Policy's Civil Authority, Extended Business Income or Ingress and Egress additional coverages because Defendants have not suffered direct physical loss or direct physical damage to property.

27.     Civil Authority coverage is also not available because no action of civil authority has prohibited access to the "premises" and the remaining requirements of Civil Authority coverage have not been met.

28.     Ingress and Egress coverage is also not available because Defendants have not sustained a loss caused by the prevention of existing ingress or egress at a "premises" and the requirements of those coverages have not otherwise been met.

29.     Defendants claim that Texas government officials issued stay-at-home orders and orders restricting or prohibiting gatherings, which resulted in Defendants' decision to temporarily close. The Ordinance or Law exclusion of the Policy excludes coverage for the enforcement of government orders that regulate the use of Defendants' premises.

30.     Defendants claim that COVID-19 and various government orders caused a loss of use of their property. The Policy excludes coverage for "loss" caused by or resulting from loss of use under the Delay or Loss of Use exclusion.

25.     Defendants claim to have temporarily closed their business because of government shut down and stay-at-home order. To the extent Defendants claim a "loss" caused by or resulting from acts or decisions by a governmental body, the Acts or Decisions exclusion precludes coverage under the Policy.

26.     Cincinnati seeks a declaration from this Court of no coverage pursuant to 28 U.S.C §2201 and Chapter 37 of the Texas Civil Practices & Remedies Code. Additionally, Cincinnati is entitled to a declaration from this Court that it has no duty to provide indemnity for any alleged losses claimed by Defendants in their January 26, 2021 Proof of Loss.

## VII.     PRAYER

THE CINCINNATI INSURANCE COMPANY prays that after consideration of this matter, either through trial or dispositive motion, that this Court order and declare the following:

A. That no coverage exists under Policy EDT 052 90 04 for any claims made by Defendants related to the COVID-19 pandemic;

B. That THE CINCINNATI INSURANCE COMPANY has no duty under Policy No. EDT 052 90 04 to indemnify Defendants for the claims made by Defendants in their January 26, 2021 Proof of Loss.

C. That THE CINCINNATI INSURANCE COMPANY be entitled to recover its fees and costs; and,

D. That THE CINCINNATI INSURANCE COMPANY receive all other relief, general or special, at law or in equity, to which it shows itself entitled to receive.

Respectfully submitted,

**LITCHFIELD CAVO LLP**

By:   */s/ Matthew D. Walker*
          MATTHEW D. WALKER
          SBN:  24075762
          Federal ID No: 2969912
One Riverway, Suite 1000
Houston, Texas 77056
(713) 418-2000
(713) 418-2001 – FAX

**ATTORNEYS   FOR   PLAINTIFF   THE CINCINNATI INSURANCE COMPANY**